UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES BAILEY, | CASE NO. 1:15CV1886 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| CAROLYN W. COLVIN[1], COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

James Bailey ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his application for Supplemental Security Income ("SSI). ECF Dkt. #1.  Plaintiff asserts that the Administrative Law Judge failed to adequately articulate his Step Three findings and the ALJ erred in the evaluation of the opinions of Plaintiff's treating psychiatrists.  ECF Dkt. #16.  For the following reasons, the Court AFFIRMS the ALJ's decision and dismisses Plaintiff's complaint in its entirety with prejudice.

## I.  PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed an application for SSI on September 9, 2011 alleging disability beginning December 31, 1995[2] due to schizoaffective disorder. ECF Dkt. #11 ("Tr.") at 174-179, 198.  That application was denied initially and on reconsideration. *Id*. at 78-80, 85-88.  On reconsideration, Plaintiff had added the allegedly disabling impairments of knee pain, human immunodeficiency virus, ("HIV") and sleep apnea to the schizoaffective disorder impairment.  *Id*. at 86.  Upon denial on reconsideration, Plaintiff requested an administrative hearing, and on May 1, 2013, an ALJ

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]At the ALJ hearing, Plaintiff, through counsel, moved to amend his onset date from December 31, 1995, to September 9, 2011.  Tr. at 10, 32.  The ALJ granted the request.  *Id.* at 12, 32.

conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE").  *Id*. at 29, 93-97.  On June 25, 2013, the ALJ issued a decision denying SSI.  *Id*. at 10-23.  Plaintiff appealed, and on August 17, 2015, the Appeals Council denied review.  *Id.* at 1-6.

On September 15, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On November 25, 2015, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #13.  On January 29, 2016, Plaintiff, through counsel, filed a brief on the merits.  ECF Dkt. #16. On April 29, 2016, Defendant filed a brief on the merits.  ECF Dkt. #19.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On June 25, 2013, the ALJ issued a decision finding that Plaintiff suffered from affective and psychotic disorders, a left knee disorder, HIV infection, and obstructive sleep apnea, which qualified as severe impairments under 20 C.F.R. §416.920(c).  Tr. at 12.  The ALJ further determined that Plaintiff's impairments, individually and in combination, did not meet or medically equal any of the Listings.  *Id*. at 16.  He noted that he gave special consideration to a number of specific Listings, including Listing 12.03 for schizophrenic, paranoid and other psychotic disorders, and Listing 14.08 for HIV infection.  *Id*.

The ALJ proceeded to find that Plaintiff had the residual functional capacity ("RFC") to perform all basic work activities, with the following restrictions that she could: lift/carry up to 25 pounds frequently and up to 50 pounds occasionally; sit and stand/walk with normal breaks up to 6 hours in an 8-hour workday; perform simple, routine tasks so long as the work is low-stress, which is defined as work not involving high production quotas, work on a "piece-rate" basis; perform work not involving arbitration, negotiations or confrontations with others; perform work not involving the supervision of others; and perform work that requires only superficial interaction with coworkers and no interactions with the public.  Tr. at 16.  Based upon this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could return to his past relevant work as a laborer, and in the alternative, he could perform jobs existing in significant numbers in the national economy, including the representative occupations of a custodian, dishwasher or laborer.  *Id*. at 21-23.  Consequently,

the ALJ found that Plaintiff had not been under a disability as defined in the SSA and he was not entitled to DIB. *Id.*

In making his determination, the ALJ cited to the opinions of Plaintiff's treating psychiatrists, Drs. Audi and Tsatiris, but found that their opinions were entitled to less than controlling weight. Tr. at 13-14, 16. Dr. Audi indicated in his May 10, 2012 mental status questionnaire that he first saw Plaintiff on October 20, 2011 and last saw him on May 10, 2012. *Id.* at 546. He noted that Plaintiff had spontaneous speech, poverty of speech, a depressed and congruent mood and affect, paranoid thoughts, poor executive functioning and abstract thinking, and limited insight and judgment. *Id.* at 546-547. Dr. Audi opined that Plaintiff had limited ability to understand, remember and follow directions, he had "lots of difficulty" in maintaining attention, and sustaining concentration, persistence or pace, and had deficiencies in social interaction and adaptation because of paranoid thoughts. *Id.* at 547. He further opined that Plaintiff would be unable to cope with work pressures and stress as he wold become psychotic. *Id.* Dr. Tsatiris opined on February 18, 2013 that he had been treating Plaintiff since July of 2012 and found that Plaintiff could rarely: maintain concentration and attention for extended periods of 2 hour segments; respond appropriately to changes in routine settings; deal with the public; function independently without redirection; work with others without being distracted or distracting them; deal with work stress; complete a normal workday or workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods; understand, execute and remember simple or complex instructions; and leave home on his own. *Id.* at 700-701. Dr. Tsatiris further opined that Plaintiff could occasionally: follow work rules and use judgment; maintain regular attendance and be punctual; relate to co-workers and deal with supervisors; maintain appearance, socialize, behave in a socially acceptable manner, relate predictably in social situations; and manage funds and schedules. *Id.*

The ALJ determined that the evidence as a whole, including the medical charts from these psychiatrists, did not support a finding that Plaintiff functioned in the manner that they had opined over a continuous 12-month period since September 9, 2011. Tr. at 15-16.

### III.	STEPS FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.	STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. LAW AND ANALYSIS

### A. STEP THREE ANALYSIS

Plaintiff first asserts that the ALJ provided an insufficient Step Three analysis because he failed to discuss or compare Listings 12.03 and 14.08 to the evidence concerning Plaintiff's schizophrenia and HIV infection even though it was discussed at the hearing and he requested that Plaintiff's counsel file a post-hearing brief specifically addressing those Listings. ECF Dkt. #16 at 16-19. Plaintiff asserts that the failure to provide such an analysis does not constitute harmless error because the record evidence shows that his severe impairments markedly limited his social functioning, markedly limited his concentration, persistence or pace, and would cause him to decompensate if the mental demands were even minimally increased. *Id*.

#### 1. WAIVER

Defendant first asserts that Plaintiff has waived any argument concerning his impairments meeting or medically equaling Listings 12.03 and 14.08 because he has failed to meet his burden at Step Three of establishing that his impairments meet or equal those Listings. ECF Dkt. #19 at 8-10. Defendant correctly notes that Plaintiff does not present any analysis to this Court comparing the evidence of record to the requirements of Listings 12.03 and 14.08. ECF Dkt. #16. Rather, Plaintiff provides a footnote in his brief citing to a plethora of page numbers in the record and

-5-

concludes that the record demonstrates that his impairments resulted in marked restrictions in social functioning and in maintaining concentration, persistence or pace and have caused a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. *Id*. at 17, fn 3. The majority of Plaintiff's argument in the body of his merits brief focuses on caselaw and the social security regulations and states that the ALJ failed to discuss and compare the evidence of his impairments to Listings 12.03 and 14.08. *Id*. at 16.

The undersigned has previously found that a claimant waived the opportunity to raise an ALJ's Step Three failure to evaluate whether a severe impairment met or medically equaled a Listing when she failed to cite the Court to evidence establishing that her impairments met or medically equaled a Listing. *See Fleming v. Comm'r of Soc. Sec.,* No. 1:09CV373, 2010 WL 649752, at \*4 (N.D.Ohio Feb. 19, 2010), unpublished, citing *Anthony v. Astrue*, No. 07–3344, 166 Fed. Appx. 451, 2008 WL 508008, at ––––6 (6th Cir. Feb.22, 2008), unpublished, citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996); *see also Lear v. Astrue*, No. 4:08Cv–00077–EHJ, 2009 WL 928371, at 3 (W.D.Ky.2009), citing *United States v. Layne*, 192 F.3d 556, 566 (6th Cir.1999) and *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997).

However, the undersigned has also previously addressed Step Three assertions of ALJ error even though the claimant failed to raise the issue on appeal. In *Cashin v. Colvin*, the undersigned discussed *Fleming* and recommended that the District Court Judge find it distinguishable from *Cashin.* No. 1:12CV909, 2013 WL 3791439, at \*5 (N.D. Ohio July 18, 2013), unpublished. The undersigned reasoned that *Fleming* was distinguishable because although Cashin failed to cite the Court to any evidence that her fibromyalgia medically equaled Listing 14.09, the ALJ in *Fleming* indicated in his decision that he had considered Fleming's fibromyalgia at Step Three while the ALJ in *Cashin* completely ignored the claimant's fibromyalgia at Step Three even though he found it to be a severe impairment at Step Two. *Id*.

Defendant cites to a number of decisions finding that undeveloped conclusory arguments are waived because it is not the Court's function to comb through the entire record in order to develop an argument for a party. ECF Dkt. #19 at 8-9, citing *General Star Nat. Ins. Co. v. Administratia*

*Asiguraritor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002) (undeveloped, conclusory arguments are waived on appeal); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); and *Handzel v. Comm'r of Soc. Sec.*, 2014 WL 2611858, *5 (N.D. Ohio June 11, 2014) ("It is not the Court's function to comb through the entire record to develop a related argument on her behalf.").

The Court will address Plaintiff's Listings 12.03 and 14.08 assertions. While he does not compare and analyze the evidence showing that his impairments meet or medically equal Listings 12.03 and 14.08 in his brief before this Court, at the hearing before the ALJ, the ALJ and Plaintiff's counsel specifically discussed Listings 12.03 and 14.08K. Tr. at 43. The ALJ asked Plaintiff's counsel to refer to the parts of the record that substantiated a finding of meeting or equaling Listing 14.08K. *Id*. Counsel explained that Plaintiff's testimony concerning suffering from diarrhea and his separate diagnosis of schizophrenia, as well as dermatologic problems and fatigue, significantly limit his daily activities, and attention and concentration, and could push Plaintiff into psychosis if his stress is increased. *Id*. at 43-44. Counsel specifically cited to Exhibit 11F at pages 2-4 of the record, Exhibit 14F at pages 74-75, and Exhibit 17F at pages 5-8. *Id*. Counsel also referred to Listing 12.03C2. *Id*. at 46.

The ALJ then informed Plaintiff's counsel that she should file a brief specifically addressing Listings 14.08 and 12.03 with specific citations to the record. Tr. at 46. Counsel filed that requested post-hearing brief on May 6, 2013. *Id*. at 284. Plaintiff's counsel specifically addressed Listings 12.03 and 14.08K in that brief and she specifically cited to the portions of the record that she alleges show that Plaintiff's HIV infection and schizoaffective disorder meet or medically equal Listings 12.03 and 14.08. *Id*. Since the parties specifically discussed Listings 12.03 and 14.08K at the hearing, and Plaintiff filed a brief at the ALJ's request which thoroughly addressed these Listings, the Court finds that while it would have been more convenient if Plaintiff's counsel had presented this evidence in her merits brief, the failure to reiterate evidence that she presented in a post-hearing

brief to the ALJ does not bar or waive consideration of her argument before this Court. Accordingly, the Court addresses Plaintiff's Step Three assertions.

### 2. LISTING 14.08

In the Step Three portion of his decision, the ALJ indicated that he gave special consideration to Listings 12.03 and 14.08, among other specified Listings. Tr. at 16. He then found that the evidence failed to show that Plaintiff's impairments, individually or in combination, met or medically equaled any of the Listings. *Id.* As support, he relied upon the opinions of the state agency psychologists and he referred back to his analysis at Step Two concerning the lesser weight given to Plaintiff's treating psychiatrists and mental health therapist. *Id.*

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § 416.920. In the third step of the analysis to determine a claimant's entitlement to social security benefits, it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairments meet all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987). An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An impairment or combination of impairments is considered medically equivalent to a listed impairment "* * *if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam). Generally, an ALJ should have a medical expert testify and give his opinion before determining medical equivalence. 20 C.F.R. § 416.926(b). In order to show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

An ALJ does not have a "heightened articulation standard" in considering the listing of impairments. *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir.2006). Rather, the Court considers whether substantial evidence supports the ALJ's findings. *Id*. However, an ALJ's decision must contain "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Reynolds*, 424 Fed. App'x at 415–416. The Court may look to the ALJ's decision in its entirety in order to justify the ALJ's Step Three analysis. *Bledsoe*, 165 Fed. App'x at 411.

Plaintiff relies upon *Reynolds v. Commissioner of Social Security*, No. 09-2060, 424 Fed. App'x 411, 2011 WL 1228165 (6th Cir. Apr. 11, 2011), unpublished, to assert that the ALJ's failure to specifically compare the record evidence to Listing 14.08K is reversible error. ECF Dkt. #16 at 18-19. In *Reynolds*, the ALJ found at Step Two of the sequential analysis that the claimant had both a physical and mental impairment that were severe. *Id*. at \*\*3. When he proceeded to Step Three, the ALJ concluded that the claimant "does not have an impairment or combination of impairments which, alone or in combination, meet sections 1.00 or 12.00 of the Listings." *Id*. He then provided a thorough analysis explaining how and why the claimant's mental impairments did not meet or medically equal Listing 12.04, but he said nothing about how or why the claimant's physical impairments did not meet or equal the Listing 1.00 Listings. *Id*. The ALJ thereafter proceeded to Step Five of the sequential analysis. *Id*.

Although Reynolds did not raise the issue on appeal, the Sixth Circuit determined that the ALJ erred by failing to analyze her physical impairments at Step Three. 2011 WL 1228165, at \*\*3. The Court noted that it had considered the issue even though it had not been raised by Reynolds in the court below and the Court indicated that it had previously considered such an argument in other cases even though the issue of meeting or equaling impairments was not raised. *Id*., citing *Gwin v. Comm'r of Soc. Sec.*, 109 Fed. App'x 102 (6th Cir. 2004). The Sixth Circuit also found that the ALJ's error was not harmless error because if the ALJ properly analyzed Step Three and found that Reynolds met Listing 1.04, she would have been entitled to social security benefits and no further analysis was required. *Id*. The Court concluded:

> Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing.

> In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir.1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir.2000).

*Reynolds*, 2011 WL 1228165, at **4.

In the instant case, the ALJ indicated at Step Three that he had considered all of the Listed Impairments, and he had given special consideration to Listing 14.08, which is more than the ALJ did in *Reynolds*. Tr. at 16. However, the ALJ in the instant case makes no further specific mention of HIV infection in his decision. Listing 14.08 provides:

> 14.08 Human immunodeficiency virus (HIV) infection. With documentation as described in 14.00F and one of the following:
>
> K. Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A-J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R., Pt. 404, Subpart P, Appendix 1 § 14.08K. The ALJ did indicate that his determination was supported by state agency psychologist opinions and a state agency physician. *Id*. However, the opinions that the ALJ relies upon are the opinions rendered for finding Plaintiff not disabled at the initial and reconsideration levels. While these opinions are entitled to weight, the initial determination did not address HIV infection because Plaintiff did not allege it as an impairment at the initial level. The reconsideration determination does address Listing 14.08 and states that no worsening of the HIV infection was alleged and an October 31, 2011 report indicated that Plaintiff had no symptoms from the HIV infection and it caused no known functional impairment. *Id*. at 72.

The agency reviewing physician was correct in stating that October 31, 2011 treatment notes indicated that Plaintiff's HIV infection was asymptomatic. *See* Tr. at 421. There are also instances of Plaintiff being asymptomatic from his HIV and there are reports of him feeling well after October 31, 2011. *Id.* at 422, 494, 587. While the ALJ did not cite to these instances at Step Three, he did cite to them at Step Four of his decision. *Id.* at 19, citing Tr. at 422, 494, 655.

Accordingly, while substantial evidence may support an opposite conclusion, the ALJ's decision viewed in its entirety shows that he gave special consideration to Listing 14.08 and he properly considered and sufficiently articulated his reasons for finding that Plaintiff's impairments did not meet or medically equal Listing 14.08 and substantial evidence supports that determination. Accordingly, the Court affirms the ALJ's decision on this issue.

### 3. **LISTING 12.03**

Plaintiff also challenges the ALJ's lack of specificity concerning Listing 12.03 in his Step Three analysis. ECF Dkt. #16 at 16-19. He asserts that the ALJ merely concluded that his impairments did not meet or medically equal Listing 12.03 and he provided no analysis or citation to the record to support his conclusion. *Id*. at 17.

Again, the Court will consider this assertion despite Plaintiff's failure to cite to evidence in the record supporting his allegation that his impairments meet or medically equal Listing 12.03. As explained in the preceding section, the parties discussed Listing 12.03 at the ALJ hearing, the ALJ requested that Plaintiff's counsel provide a post-hearing brief on this Listing, and Plaintiff's counsel provided that brief which specifically addressed Listing 12.03 and citations to the record evidence believed to establish that Plaintiff met or medically equaled the Listing. Tr. at 41, 45-46, 284-286.

Listing 12.03 provides the following:

> 12.03 Schizophrenic, paranoid and other psychotic disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:

-11-

1. Delusions or hallucinations; or

2. Catatonic or other grossly disorganized behavior; or

3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

a. Blunt affect; or

b. Flat affect; or

c. Inappropriate affect; or

4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.03. The ALJ in the instant case indicated at Step Three that he had given special consideration to Listing 12.03. Tr. at 16. He stated that Plaintiff's impairments did not, individually or in combination, meet or medically equal a Listing. *Id.* He cited to the agency psychologist opinions in the record and an agency state reviewing physician for support. *Id.* He also explained

-12-

that he had given lesser weight to the opinions of Plaintiff's two treating psychiatrists and his mental health therapist for the same reasons that he had given at Step Two of his analysis. *Id.*

These statements, combined with the ALJ's findings and analysis in the other parts of his decision, show that he more than adequately addressed Listing 12.03 and whether Plaintiff's mental impairments met or medically equaled that Listing. The ALJ relied upon the opinions of the agency reviewing psychologists in his Step Three finding and indicated that he had more fully explained those opinions in Step Two of his decision.  Tr. at 13-16.  On January 13, 2012, the agency reviewing psychologist evaluated Listing 12.03 at the initial level and reviewed the medical evidence.  Tr. at 57-60.  He found that Plaintiff's schizoaffective disorder did not meet or medically equal Listing 12.03 and Plaintiff's impairment caused only moderate restrictions in daily living activities, maintaining social functioning and maintaining concentration, persistence or pace, and caused no repeated episodes of decompensation of extended duration.  *Id.*  He also found that Plaintiff's impairment did not meet or equal the "C" criteria of Listing 12.03.  *Id.*  The psychologist cited to medical evidence in the record supporting the determination.  *Id.* at 55-56.  The ALJ gave weight to this opinion, but found that additional evidence existed that was not available to this psychologist which caused him to modify the restrictions to finding that Plaintiff had only mild limitations in daily living activities and mild limitations in maintaining concentration, persistence or pace.  *Id*. at 14-15.  The ALJ cited to Plaintiff's daily living activities such as participating in group therapy, playing video games, preparing simple foods, shopping, performing light housework, using public transportation, and attending Alcoholics Anonymous and Narcotics Anonymous meetings.  Tr. at 15, citing Tr. at 211, 221, 232, 249, 256.  The ALJ also found Plaintiff mildly limited in concentration, persistence or pace, noting that while the agency reviewing psychologists found a moderate limitation in this area, none of the medical records indicated a marked or extreme limitation in this area, and he did not observe a marked or extreme limitation in this area at the hearing.  Tr. at 15.  The ALJ cited to medical evidence and other evidence supporting his finding.  *Id*., citing Tr. at 57, 69, 436, 444-448, 453-454, 531, 686.

The ALJ did find Plaintiff markedly limited in social interactions, which Plaintiff does not dispute.  Tr. at 13.  As to experiencing episodes of decompensation, the ALJ noted that an agency

reviewing psychologist had found that Plaintiffs mental impairments had caused one or two episodes of decompensation of an extended duration, but he declined to adopt this finding because the agency reviewing psychologist did not describe the episodes but merely made a statement that Plaintiff had experienced such episodes. *Id*. at 15, citing Tr. at 70.

The ALJ also addressed the treating psychiatrists' opinions that Plaintiff was extremely limited in his work-related abilities. Tr. at 13-14, 16. He explained that the evidence as a whole, including the treatment notes from these providers, did not support a finding that Plaintiff was so severely limited over a continuous 12-month period since September 9, 2011. *Id*. at 13. The ALJ cited to numerous exhibits in the record which showed that Plaintiff at times reported "doing well," he was on medications which were helping, he reported no hallucinations, and he had a better time concentrating. *Id*. at 13, citing Tr. at 451, 453, 533, 536, 676, 686, 699, 706. The ALJ also referenced the October 20, 2011 GAF score of 60 for Plaintiff assessed by Dr. Audi, one of Plaintiff's treating psychiatrists, at Plaintiff's initial psychiatric examination. *Id*. at 14, citing Tr. at 435. This indicates moderate symptoms. The ALJ additionally cited to the other GAF score of 55 for Plaintiff in the record, which was assessed on July 9, 2012 by Dr. Tsotiris, Plaintiff's other treating psychiatrist, and indicates moderate symptoms as well. *Id*. at 14, citing Tr. at 553. The ALJ also noted that Plaintiff reported to his doctor that he was doing well mentally on December 28, 2012. *Id*. at 14, citing Tr. at 686.

In sum, while substantial evidence may support an opposite conclusion, the ALJ's decision viewed in its entirety shows that he properly considered and sufficiently articulated his reasons for finding that Plaintiff's impairments did not meet or medically equal Listing 12.03 and substantial evidence supports that determination. Accordingly, the Court affirms the ALJ's decision on this issue.

### B.     OPINIONS OF TREATING PSYCHIATRISTS

Plaintiff also alleges that the ALJ committed error in failing to properly evaluate and give good reasons for the weight that he attributed to the opinions of Dr. Audi and Tsatiris, Plaintiff's treating psychiatrists. ECF Dkt. #16 at14-21. For the following reasons, the Court finds that the

ALJ sufficiently articulated good reasons for attributing less than controlling weight to these opinions and substantial evidence supports his decision to do so.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even

where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Commissioner of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered. *Barrett v. Astrue*, 2011 WL 6009645, at *6 (E.D.Ky. Dec.1, 2011). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ).

In *Gayheart v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals emphasized that the social security regulations require that two separate analyses occur when evaluating a treating source's opinion. 710 F.3d 365, 375-377 (6th Cir. 2013). The ALJ must first consider whether to give the treating source's opinion controlling weight by determining if it is well-supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Id*. Then, when the ALJ decides not to give controlling weight to the opinion, the ALJ moves on to determine the weight that the opinion should receive based on the regulatory factors. *Id*. The Sixth Circuit has also held that if "the ALJ adequately addresses the factors required by *Gayheart* and articulates good reasons for discounting the opinion of a treating source, the Commissioner's decision will not be upset by a failure to strictly follow the *Gayheart* template." *Id.* at *5 (citing *Dyer v. Soc. Sec. Admin*., 568 F. App'x 422, 427–28 (6th Cir.2014) ). However, "the reasons must be supported by the evidence in the record and sufficiently specific to make clear the weight given to the opinion and the reasons for that weight." *Brasseur v. Comm'r. of Soc. Sec.*, 525 F. App'x 349, 351 (6th Cir.2013) (citing *Gayheart*, 710 F.3d at 376).

The Court finds that the ALJ has provided good reasons for attributing less than controlling weight to the opinions of Drs. Audi and Tsatiris. The ALJ noted the severe restrictions opined by Plaintiff's psychiatrists. Tr. at 13. However, he found that these opinions were not supported by the treatment notes of these doctors. He cited to a large number of exhibits to support his finding, including treatment notes where Plaintiff did not report hallucinations and was found not to have problems concentrating. *Id*. at 14-15, citing Tr. at 19, 437, 553, 676. The ALJ also noted that Dr. Audi rated Plaintiff's GAF as 60, indicative of moderate symptoms, on October 20, 2011 at Plaintiff's initial psychiatric evaluation. *Id*. at 14, citing Tr. at 435. The ALJ further cited to a treatment note by Dr. Tsatiris on February 18, 2013, the same date of the doctor's opinion, indicating that Plaintiff reported feeling "okay," and he was sleeping "pretty good," and he had no hallucinations or delusions. *Id*. at 14, citing Tr. at 703. Dr. Tsatiris also noted at that examination that Plaintiff was exhibiting an improved mood with an increased dose of Seroquel. *Id.* at 703. The ALJ additionally cited to a March 18, 2013 treatment note from Dr. Tsatiris indicating that Plaintiff reported feeling "upbeat"and Dr. Tsatiris noting that Plaintiff was pleasant and "upbeat" and was having mood stability. *Id*. at 14, citing Tr. at 710. The ALJ also noted that Dr. Tsatiris rated Plaintiff's GAF at 55, indicative of moderate symptoms at his initial psychiatric assessment. *Id*. at 14, citing Tr. at 557.

Again, while substantial evidence may exist to support a decision to the contrary, the Court finds that the ALJ properly applied the treating physician rule, sufficiently articulated reasons for attributing less than controlling weight to the opinions of Drs. Audi and Tsatiris, and substantial evidence supports that determination.

## VI.  CONCLUSION

Based upon a review of the record, the Statements of Error, and the law and analysis provided above, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

DATE: September 16, 2016        */s/George J. Limbert*
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE